

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3967 | **DATE** | 11/20/2002 |
| **CASE TITLE** | HA-LO Industries Inc. vs. Centerpoint Properties Trust | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: The Court affirms the decision of the U.S. Bankruptcy Court ordering HA-LO to pay CenterPoint $600,311 in unpaid rent for the month of November, 2001. The Clerk is directed to enter judgment affirming the decision of the Bankruptcy Court.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | NOV 22 2002 | |
| | Notified counsel by telephone. | date docketed | 12 |
| | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | 11/21/2002 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| GL | courtroom deputy's initials | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

IN RE: )
)
HA-LO INDUSTRIES INC., et al., )
)
    Debtors. )
)
———————————————— )
)
HA-LO INDUSTRIES INC. )
)
    Appellant, )
vs. ) Case No. 02 C 3967
)
CENTERPOINT PROPERTIES TRUST )
)
    Appellee. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The United States Bankruptcy Court ordered HA-LO Industries, Inc. to pay its former landlord, CenterPoint Properties Trust, $600,311 for rent due under an office building lease between the parties, the terms of which extended beyond HA-LO's filing of a voluntary petition for bankruptcy. The bankruptcy court's order was based in part on its determination that §365(d)(3) of the Bankruptcy Code requires a debtor-in-possession that has elected to reject a lease of nonresidential real property to pay the monthly rent due under that lease as it becomes due, notwithstanding that this may require the debtor to pay advance rent covering a period after its rejection of the lease takes effect. In the bankruptcy court, HA-LO objected unsuccessfully to that interpretation, arguing that §365(d)(3) only requires tenant debtors to pay rent prorated through the date of rejection, in spite of the lease's

provision for payment of a full month's rent on the first day of that month. HA-LO has appealed the bankruptcy court's order and urges this Court to adopt its "proration approach" to §365(d)(3). For the reasons set forth below, the Court affirms the bankruptcy court's decision.

## FACTUAL BACKGROUND

HA-LO and CenterPoint were parties to an Office and Industrial Building Lease dated November 30, 1998 ("Lease"), pursuant to which CenterPoint leased an office building to HA-LO for a term of 15 years commencing April 1, 2001. Under the terms of the lease, HA-LO was obligated to pay rent in the amount of $660,342.17 per month, payable in advance on the first day of each month. HA-LO moved into the leased premises on April 1, 2001 and remained there through the first few days of November, 2001.

On July 30, 2001, HA-LO and certain of its subsidiaries filed in the United States Bankruptcy Court for the District of Delaware voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. Pursuant to §365(a) of the Code, on August 21, 2001, HA-LO sought authority to reject the Lease, at its option, effective upon 30 days written notice to CenterPoint. On September 6, 2001, the Bankruptcy Court granted that authority.

HA-LO continued to occupy the leased premises under the terms of the lease. However, on October 3, 2001, HA-LO exercised its option to reject the Lease, and it provided written notice to CenterPoint declaring its intention to vacate the premises and reject the Lease effective November 2.[1] On November 1, 2001, HA-LO tendered a check to CenterPoint in the amount of $60,031.17. This

---

[1] HA-LO contends that the rejection of the Lease was effective on November 3, 2001. In fact, rejection became effective on November 2, 2001, exactly 30 days after written notice was proffered on October 3, 2001.

amount represented a pro-rata payment of rent for the three day period during which HA-LO planned to occupy the office building during the month of November. By November 4, 2001, HA-LO had vacated the premises.[2]

CenterPoint accepted HA-LO's check but demanded that HA-LO pay the balance of the rent for the month of November. When HA-LO refused, CenterPoint filed an administrative rent claim pursuant to Bankruptcy Code §365(d)(3) and sought an order to compel immediate payment of the balance of the November rent.

On March 19, 2002, HA-LO's bankruptcy case was transferred to the United States Bankruptcy Court for the Northern District of Illinois, along with CenterPoint's §365(d)(3) claim. In an order entered on May 15, 2002, the bankruptcy court granted CenterPoint's claim, and ordered HA-LO to pay CenterPoint $600,311, representing the amount due through the end of November.

The bankruptcy court's decision rested, largely, upon its interpretation of §365(d)(3). That section provides that:

> [t]he trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. §365(d)(3). The bankruptcy court reasoned that the plain language of the statute requires the trustee or (as here) the debtor-in-possession, 11 U.S.C. §1107(a); *In re Handy Andy Home Improvement Centers Inc.*, 144 F.3d 1125, 1127 (7th Cir. 1998), to satisfy all rent obligations under a lease "arising ... after the order for relief" as those obligations come due. Applying this interpretation

---

[2] The parties dispute whether HA-LO vacated the premises on November 3 or November 4. This factual issue was irrelevant to the Bankruptcy Judge's disposition of CenterPoint's §365(d)(3) claim, and to our decision on appeal.

to the facts presented by CenterPoint's claim, the bankruptcy court held that HA-LO was obligated under the lease to pay the full month's rent for November 2001 on the first day of that month, even though it had rejected the lease by November 2 and had vacated the premises by November 4. The bankruptcy court also rejected HA-LO's claim that independent of the language of §365(d)(3), HA-LO was entitled under the terms of the Lease to make a final rent payment prorated to reflect its partial occupation during November.

On May 24, 2002, HA-LO appealed, seeking reversal of the Bankruptcy Court's May 15, 2001 order requiring it to pay CenterPoint an additional $600,311 in rent.

## DISCUSSION

There are two questions to be decided on appeal. First, we must determine whether the bankruptcy court correctly interpreted §365(d)(3). Second, we must decide whether the bankruptcy court correctly determined that independent of §365(d)(3), the terms of HA-LO's lease do not support its prorated payment of rent for November 2001. Before we resolve either of those questions, however, we must address a dispute over the standard of review.

**A.    Standard of Review**

In reviewing bankruptcy court decisions, the district court applies the same general standards that govern other appeals in the federal system. We defer to the bankruptcy court's findings of fact, reviewing them under the "clearly erroneous" standard. *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). Conclusions of law are reviewed *de novo*. *Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 835 (7th Cir. 2002).

Both parties acknowledge that the bankruptcy court's interpretation of §365(d)(3) is a legal

conclusion subject to *de novo* review, but they dispute which standard ought to apply to the contract interpretation issue raised on appeal. CenterPoint urges this Court to treat the bankruptcy court's conclusions regarding the meaning of the Lease as findings of fact. It relies on two decisions in which the Seventh Circuit applied the clearly erroneous standard to review district court interpretations of ambiguous contract terms. *See Platinum Technology, Inc. v. Federal Insurance Co.*, 282 F.3d 927 (7th Cir. 2002); *Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co.*, 226 F.3d 903 (7th Cir. 2000). But as HA-LO points out, in each of these cases, the Court of Appeals deferred to the district court's findings regarding extrinsic evidence offered to prove the meaning of certain ambiguous terms. Here, the bankruptcy court did not consider extrinsic evidence and made no conclusions regarding the ambiguity of any of the terms in the Lease. Although the parties dispute the implications of certain provisions in the Lease, neither party raised an issue of extrinsic or intrinsic ambiguity in the language of the Lease that would have required the bankruptcy court to engage in fact finding. Rather, the bankruptcy court decided as a matter of law that the Lease did not require the proration of HA-LO's rent obligation in the final month of the Lease. Thus, we review its construction *de novo*.

### B. Bankruptcy Code §365(d)(3)

Upon entry of an order for relief in bankruptcy, a debtor-in-possession may "assume or reject any ... unexpired lease of the debtor." 11 U.S.C. §365(a). Until the rejection or assumption takes legal effect, the debtor-in-possession must perform its lease obligations. Section 365(d)(3) provides that "[t]he trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or

rejected, notwithstanding section 503(1) of this title ... " 11 U.S.C. §365(d)(3). The language of this section makes clear that from the time that HA-LO filed its bankruptcy petition through November 2, 2001, when its rejection of the CenterPoint Lease took legal effect, HA-LO was obligated to pay rent. The question is whether §365(d)(3) requires HA-LO to pay the rent for the entire month of November that was due on November 1.

The bankruptcy court read §365(d)(3) to require HA-LO to pay rent for the entire month of November. In reaching this conclusion, the court adopted a performance date approach to the debtor-in-possession's obligations under the statute. Because the Lease required HA-LO to pay a full month's rent prospectively, on the first day of each month, the court ruled that HA-LO's obligation to pay the full amount of November rent arose on November 1, 2001, after the order for relief, and one day before the Lease was rejected. In adopting this performance date approach, the bankruptcy court followed the reasoning adopted by several other courts that have addressed this issue. *See In re Montgomery Ward Holding Co.*, 268 F.3d 205 (3rd Cir. 2001); *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986 (6th Cir. 2000); *In re Comdisco*, 272 B.R. 671 (Bankr. N.D. Ill. 2002).

HA-LO argues that we should reject the bankruptcy court's analysis and adopt a proration approach to §365(d)(3). Relying on the Seventh Circuit's decision in *In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir. 1998), HA-LO urges us to limit its November rent obligation under §365(d)(3) to a prorated payment for those first two days of November before the rejection of the Lease took effect. Based on our reading of the language and purpose of §365(d)(3), we reject HA-LO's argument and hold that §365(d)(3) required HA-LO to pay November's rent when it came due on Nov. 1, 2001.

We begin with the language of §365(d)(3). *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *In re Estate of Medcare HMO*, 998 F.2d 436, 440 (7th Cir. 1993) ("[w]hen interpreting the Bankruptcy Code, as with any other statute, a court must look first to the statutory language"). Section 365(d)(3) requires the debtor to "timely perform [its] obligations" under a lease until the lease is rejected. The plain meaning of this language requires that the debtor fulfill its lease obligations on time and according to the lease's terms until the rejection takes effect. Where, as here, a lease requires the debtor to pay rent in advance, §365(d)(3) requires the debtor to tender the full rent payment in advance on the date prescribed in the lease. We agree with the Sixth Circuit that §365(d)(3) is unambiguous in this regard. *See Koenig*, 203 F.3d at 989 (holding that where debtor was obligated under its lease to pay rent in advance on the first of the month, and rejection of the lease was effective on the second, "§365(d)(3) is unambiguous as to the debtor's obligation and requires payment of the full month's rent").

This reading of the statutory language is consistent with evidence of §365(d)(3)'s history and purpose. Several Courts of Appeals, including the Seventh Circuit, have agreed that §365(d)(3) was intended to relieve landlords from the burden of proving that the rent payments they sought to collect from debtors prior to rejection were "actual and necessary" costs of preserving the bankruptcy estate. *See Montgomery Ward*, 268 F.3d at 210-211; *Koenig*, 203 F.3d at 989; *Handy Andy*, 144 F.3d at 1128; *In re Cukierman*, 265 F.3d 846, 850-851 (9th Cir. 2001). Indeed, this purpose is evident from additional language in §365(d)(3) designed to carve out an exception for landlords from the "actual and necessary" standard of Bankruptcy Code §503(b)(1): the debtor-in-possession "shall timely perform all the obligations of the debtor ... *notwithstanding section 503(b)(1)*." 11 U.S.C. 365(d)(3)

7

(emphasis added); *see Pacific Atlantic Trading Co. v. Chickering & Gregory*, 27 F.3d 401, 403 (9th Cir. 1994) (explaining that prior to passage of §365(d)(3), "[l]essors were entitled to an administrative priority for occupancy of the premises, but only to the extent allowed under section 503(b)(1), which was an amount equal to the reasonable value of the debtor's actual use and occupation of the property"). Our construction of §365(d)(3) furthers its intended purpose, allowing landlords to collect timely rent payments in the amounts prescribed in the lease.

As the court noted in *In re Comdisco*, this construction of §365(d)(3) "risks undermining bankruptcy reorganizations by imposing costs that are not necessary" and "may often result in windfalls to the landlord, at the expense of other creditors and stakeholders," a result that a proration approach would prevent. But reading a proration requirement into §365(d)(3) would be the same as reading §503(b)(1)'s "necessary" limitation into it, which would "directly violate the Congressional dictate that §365(d)(3) be applied in spite of §503(b)(1)." *In Re Comdisco*, 272 B.R. at 675-676. As the court in *Comdsico* stated, we must enforce the statute as Congress wrote it. HA-LO was obligated to pay the full amount of November rent as that obligation arose under the lease on November 1.

We do not agree with HA-LO that the Seventh Circuit's decision in *Handy Andy* calls for a different result. That case dealt with the debtor's obligation during the post-petition/pre-rejection period to reimburse the landlord for taxes incurred prior to bankruptcy but billed after the filing of the petition. The Seventh Circuit held that regardless of the terms of the lease, taxes billed to the debtor during bankruptcy must be prorated to exclude obligations accruing before bankruptcy, and that only taxes attributable to post-petition occupancy are payable under §365(d)(3). The court explained that "the prioritizing of post-petition debt enables the debtor (or trustee) to ignore sunk costs–treat bygones

8

as bygones–and continue operating as long as the debtor's business is yielding a net economic benefit." *Handy Andy*, 144 F.3d at 1127. With this core principle of bankruptcy in mind, the Seventh Circuit construed §365(d)(3) to limit the debtor's obligations to those arising after a petition is filed.

*Handy Andy* did not address post-petition rent payable in advance, and the rationale for the decision cannot be extended to the facts here. The rent payment in dispute is not a sunk cost, but rather consideration for HA-LO's right to occupy CenterPoint's office building following the filing of the bankruptcy petition. As such, HA-LO's rent obligation is a current operating cost that must be paid. *See Comdisco*, 272 B.R. at 275 (stating that advance rent during the pre-rejection period is "a charge for the consumption of a resource during the administration of the case," and explaining the bankruptcy principle that costs of administration must be paid).

C. **The Lease**

HA-LO argues that regardless of our interpretation of §365(d)(3), the Court should read the Lease to require the proration of rent in the event of rejection in bankruptcy. HA-LO acknowledges that the Lease does not expressly provide for the proration of its rent obligations in this circumstance, but urges us to consider other provisions in the Lease that contemplate proration during periods of partial occupancy as evidence that rent should only be paid during periods of actual occupancy before rejection. The bankruptcy court decided that the Lease did not provide an independent basis for requiring proration. (R. at 254-256). We agree. As noted above, however, we review the bankruptcy court's Lease construction *de novo*. In accordance with the choice of law provision in the Lease, we apply Illinois law. *See Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 835 (7th Cir. 2002).

9

The parties dispute the significance of two separate clauses in the Lease that provide for the proration of rent in certain circumstances. HA-LO argues that language found in §§ V.1 and XX.1 reflects a general policy under the Lease that rent obligations are to be prorated in any month of partial occupancy. CenterPoint insists that the Lease intentionally provides for proration of rent in only narrow and specific circumstances.

Section V.1 of the Lease provides: "The Annual Base Rent shall be paid in advance, in twelve (12) equal monthly installments, commencing on the Commencement Date (prorated for any partial month) and continuing on the first (1st) day of each month thereafter for the balance of the term of this Lease ..." (R. 28.). HA-LO argues that the phrase "prorated for any partial month" makes clear that the tenant's obligation is to pay prorated rent for any partial month during the period that the Lease is in force. We do not read that phrase so broadly. As the bankruptcy court noted, the "proration" language in §V.1 is set off by parentheses and is preceded directly by the phrase "commencing on the Commencement Date." Notwithstanding the use of the adjective "any," from which HA-LO draws its broader interpretation, the proration clause seems to modify the term "Commencement Date." Considered in context, the phrase "prorated for any partial month" is most naturally read as addressing the tenant's rent obligation in the first month of the Lease.

This determination, however, does not settle matters. HA-LO argues that even if the proration language in §V.1 applies only to the first month of the Lease, that language still provides evidence of a policy under the Lease to prorate the tenant's rent obligations in other circumstances where a month of partial occupancy is possible. In support of this theory, HA-LO directs us to §XX.1, which allows for the payment of prorated rent as damages if the landlord is forced to terminate the Lease. The relevant

10

language reads: "In the event of the termination of this Lease by Landlord ... Landlord is entitled to recover under any provision of this Lease or at law or equity, including, but not limited to, all Rent accrued and unpaid for the period up to and including the termination date, as well as all other additional sums payable by Tenant ..." (R. 46). HA-LO argues, and CenterPoint seems to concede, that the language "all Rent accrued and unpaid for up to and including the termination date" contemplates proration of HA-LO's rent obligation if CenterPoint decided to terminate the lease. However, HA-LO attributes a significance to this language and to the proration provision in §V.1 that cannot be supported by the Lease as a whole. The parties could well have agreed to prorate the first month's rent, and to allow for the collection of prorated rent as a remedy for the landlord, and yet not have contemplated proration in all cases where the Lease might end prematurely. Indeed, the fact that they specifically provided for proration in some instances and not in others indicates that this remedy should be limited to the particular situations addressed in the Lease. *See, e.g., Pritchett v. Asbestos Claims Management Corp.*, 332 Ill. App. 3d 890, 897, 773 N.E.2d 1277, 1283 (2002) (noting a presumption against provisions that easily could have been included in the contract but were not). As HA-LO reminds us, Illinois law requires this Court to examine the Lease as a whole, "giving effect to the extent possible, to all contractual provisions." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1038 (7th Cir. 1998) (quoting *O'Rourke v. Access Health, Inc.*, 282 Ill. App. 3d 394, 668 N.E.2d 214, 220 (1996)). Yet no principle of contract interpretation requires us to imply terms that the language of the Lease does not support. Considering the Lease as a whole, we cannot agree with HA-LO that it provides an independent basis for requiring proration of its November, 2001 rent.

11

## CONCLUSION

For the reasons stated above, the Court affirms the decision of the United States Bankruptcy Court ordering HA-LO to pay CenterPoint $600,311 in unpaid rent for the month of November, 2001. The Clerk is directed to enter judgment affirming the decision of the Bankruptcy Court.

Date: November 20, 2002

MATTHEW F. KENNELLY
United States District Judge